UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| PHILIP M. SEBOLT, | ) |
|                 Plaintiff, | ) |
|                 v. | ) No. 2:19-cv-00429-JPH-DLP |
| TYNDALL Corr. Officer, | ) |
| MONETT Corr. Officer, | ) |
| YOUNG Lieutenant, | ) |
| WASSON Counselor, | ) |
| ROYER Unit Mger., | ) |
| UNITED STATES OF AMERICA, | ) |
|                 Defendants. | ) |

**Order Granting in Part and Denying in Part Motion to Dismiss**

Plaintiff Philip Sebolt, at all relevant times an inmate confined at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"), brings this action alleging the defendants were negligent and violated his constitutional right to humane conditions of confinement by failing to provide him an appropriate mattress for 75 days. He seeks damages pursuant to *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA").

The defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing (1) that special factors counsel against an expansion of *Bivens* in this context, (2) that Mr. Sebolt does not allege that defendants Young, Wasson, or Royer were personally involved, and (3) that the FTCA claim fails because Mr. Sebolt didn't identify an Indiana state law that would recognize a cause of action for the injury alleged in his amended complaint.

For the reasons discussed in this Order, the defendants' motion is granted in part and denied in part.

1

## I. Factual and Procedural Background

Mr. Sebolt was placed in the Special Housing Unit ("SHU") from April 24, 2017, to May 3, 2017, and again from May 6, 2017, to July 11, 2017—a total of 75 days. Dkt. 12 at ¶¶ 18, 23, 25, 33. Mr. Sebolt did not have a normal mattress while housed in the SHU; rather, he had a wet and moldy "small piece of foam that was no thicker than a standard yoga mat." *Id.* at ¶ 19. The mat was short, so more than a foot of Mr. Sebolt's body lay on the steel bedframe. *Id.*

After sleeping on the mat for one night, Mr. Sebolt began to have dull pain in his hips, ankles, and shoulders and recurring headaches. *Id.* at ¶ 20. On April 26, Mr. Sebolt complained to several officers, including one whom he believes was Officer Monett. *Id.* at ¶ 22. Officer Tyndall, who was in charge of the unit, overheard Mr. Sebolt and yelled, "We don't have any more mattresses. You are going to have to deal with what you got. NOW STOP ASKING EVERYONE!" *Id.* (capitalization original). Mr. Sebolt was advised by health services to take over-the-counter pain medication for his pain. *Id.* at ¶ 23.

During his second stint in the SHU, Mr. Sebolt again asked several officers for a mattress. On May 22, Lt. Young told Mr. Sebolt and other inmates inquiring about a mattress (the problem wasn't unique to Mr. Sebolt) to speak with evening watch. *Id.* at ¶¶ 27−29. On May 25, Lt. Young told two inmates that no mattresses would be available until they were purchased. *Id.* at ¶ 29. On May 26, Officer Tyndall told Mr. Sebolt to "stop asking him for a mattress." *Id.* at ¶ 30.

Mr. Sebolt sought relief through the grievance process. *Id.* at ¶ 31. In response to Mr. Sebolt's informal grievance, Counselor Wasson acknowledged the problem but took no action.

*Id.* Unit Manager Royer reviewed the grievance and was thus aware of the issue, but he also did nothing. *Id.*

Mr. Sebolt continued to ask correctional officers for a mattress until his transfer from USP Terre Haute on July 11, 2017. *Id.* at ¶ 33. The injuries he sustained from sleeping on the foam mat included pain in his neck, shoulder, elbow, back, hip, and ankle, headaches, loss of sleep, and emotional distress and frustration. *Id.* at ¶ 34.

The Court screened Mr. Sebolt's complaint and authorized him to proceed with an Eighth Amendment conditions-of-confinement claim against the individual defendants and, as an alternative theory of liability, an FTCA claim of negligence against the United States. Dkt. 16 at 4.

The defendants' motion to dismiss was filed on September 22, 2020. Dkt. 33. Mr. Sebolt's response was belatedly filed on October 8, 2021.[1] Dkt. 46. The motion is now ripe for ruling.

### III. Discussion

**A. Standard on a Rule 12(b)(6) Motion**

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all

---

[1] After three extensions of time, Mr. Sebolt's response was due on July 9, 2021. Dkt. 43. He requested a fourth extension, dkt. 44, which was denied, dkt. 45. On October 8, 2021, the Court received Mr. Sebolt's response which he certified under penalty of perjury was signed and hand-delivered to prison staff for mailing at the United States Penitentiary in Tucson, Arizona on July 26, 2021. It's difficult to believe that it took almost two and a half months for Mr. Sebolt's response to travel from Arizona to Indiana. But the Court exercises its discretion and considers Mr. Sebolt's response given his pro se status and his limited access to the law library.

3

permissible inferences in the plaintiff's favor. *See Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018).

### B.  *Bivens* and *Abbasi*

The defendants first argue that a *Bivens* remedy is not available for Mr. Sebolt's conditions-of-confinement claim. There is no Congressional authority to award damages against federal officials who violate the Constitution while acting under color of federal law. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Fifty years ago, the Supreme Court held in *Bivens* that district courts have the implied authority to award damages against federal officials for unreasonable searches and seizures in violation of the Fourth Amendment. 403 U.S. at 397.  In *Davis v. Passman*, the Court extended this implied authority to actions alleging gender discrimination in federal employment in violation of the Fifth Amendment. 442 U.S. 228, 249 (1979). And in *Carlson v. Green*, the Court again extended this implied authority to actions alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment. 446 U.S. 14, 24 (1980).

The Supreme Court curtailed the availability of a *Bivens* damages remedy in *Ziglar v. Abbasi*, 137 S. Ct. 1843. In *Abbasi*, undocumented immigrants who were suspected of terrorism and detained in harsh conditions in the months after the September 11 terrorist attacks sued three high executive officers in the Department of Justice and two wardens at the facility where they were held. The Court discussed the evolution of claims under *Bivens* and created a test to determine whether to extend a *Bivens* remedy into a new context.

In *Abbasi,* the Court noted that "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." 137 S. Ct. 1843 at 1855. And in the forty years since *Carlson*, the Court has

declined to create any new contexts for *Bivens* claims. *Id.* at 1857 (listing cases); *see also Hernandez v. Mesa,* 140 S. Ct. 735 (2020) (no implied damages remedy in action against border patrol agent for cross-border shooting). Each time the Court was presented with a new scenario, it reasoned there were "special factors counselling hesitation" against creating a new *Bivens* context and that alternative remedies were available to address the category of injury alleged by the plaintiffs. *Abbasi*, 137 S. Ct. at 1853–54. Expanding *Bivens* to a new context is now a "disfavored judicial activity." *Id.* at 1857.

To determine whether a *Bivens* remedy is available to Mr. Sebolt for his conditions-of-confinement claim, the Court first asks whether it presents a new *Bivens* context by determining whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S. Ct. at 1864. If it does, the Court then asks whether there are any special factors that counsel against an extension of *Bivens*. *Hernandez,* 140 S. Ct. at 743.

### 1. Whether the Eighth Amendment Conditions-of-Confinement Claim Presents a New *Bivens* Context

Mr. Sebolt seeks to create a new *Bivens* context. Neither *Bivens*, *Davis*, nor *Carlson* involved allegations of unconstitutional conditions of confinement in a federal prison. The fact that *Carlson* involved a medical services claim alleging violations of the Eighth Amendment is not dispositive. "A claim may arise in a new context even if it is based on the same constitutional provision as a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743; *see also Abbasi*, 137 S. Ct. 1864 ("[A] modest extension [of *Bivens*] is still an extension."). Since *Carlson* was decided, the Court has rejected attempts to extend *Bivens* to other contexts involving conditions of confinement under both the Eighth and Fourteenth Amendments. *See e.g. Correction Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (action against a private prison operator); *Minneci v. Pollard*, 565 U.S. 118, 125 (2012) (action against a private prison

5

operator's employees); *Abbasi*, 137 S. Ct. at 1860 (action brought by detained immigrants under investigation following the September 11 terrorist attacks). In light of these decisions, the conditions of confinement claim in this case is a different context than the medical services claim in *Carlson*.

### 2. Whether Special Factors Counsel Hesitation

Next the Court considers whether special factors counsel hesitation in extending *Bivens* to this context. Three factors are dispositive here—the availability of alternative remedies, the systemic nature of Mr. Sebolt's claim, and congressional inaction.

First, Mr. Sebolt has alternative remedies available to him. The BOP's administrative remedy procedure is an alternative process that "provides … means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see also Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018) (unpublished) (recognizing BOP administrative remedies as an alternative remedy); *Mack v. Yost*, 968 F.3d 311, 321 (3d Cir. 2020) (finding that the BOP administrative remedy process and availability of injunctive relief provided alternative remedy processes counseling against expansion of *Bivens* to First Amendment retaliation claims). Mr. Sebolt argues that the BOP's administrative remedy procedure is an inadequate remedy due to the length of the process. Dkt. 46 at 6−10. But it's the availability of the remedy, not the success of the remedy in a particular situation that counts. *See Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Further, as discussed below, Mr. Sebolt may seek money damages through the FTCA. This negates Mr. Sebolt's argument that, absent a *Bivens* remedy, he will be unable to obtain any meaningful relief due to his transfer to another prison.

6

Second, Mr. Sebolt's claim arises from a lack of facility resources rather than malfeasance by an individual officer. The defendants did not refuse to provide Mr. Sebolt a mattress as a punishment but because the facility was out of mattresses. Dkt. 1 at ¶¶ 21, 29. In *Dancy v. Watson*, 2020 WL 1139422, at *3 (S.D. Ind. Mar. 9, 2020), this Court held that special factors counseled against creating a new *Bivens* context for allegations of inadequate sanitation in a federal prison's food services area. "The failure to maintain adequate sanitation in one of its facilities will rarely be the fault of one or even several federal officials. Instead, it suggests an imperfect balance of financial resources, facilities management, and employee training across the organization." (citing *Malesko*, 534 U.S. at 70 ("The purpose of *Bivens* is to deter individual officers from committing constitutional violations.")). A *Bivens* action is an inappropriate remedy for systematic issues such as a mattress shortage.

Finally, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Abbasi*, 137 S. Ct. at 1865. In passing the Prison Litigation Reform Act of 1995 (the "PLRA"), Congress "placed a series of controls on prisoner suits . . . designed to prevent sportive filings in federal court." *Skinner v. Switzer*, 562 U.S. 521, 535–36 (2011). Congress did so with the intent to "reduce the quantity of inmate suits." *Jones v. Bock*, 549 U.S. 199, 223 (2007). Significantly, the PLRA does not provide for a standalone damages remedy against individuals, suggesting that "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Abbasi*, 137 S. Ct. at 1865.

In summary, the special factors analysis dictates hesitation in applying *Bivens* to Mr. Sebolt's conditions-of-confinement claim. Accordingly, these claims are dismissed against all individual defendants. Because there is no *Bivens* remedy available to Mr. Sebolt, the Court need not address the defendants' second argument—that Mr. Sebolt failed to plead facts showing that

defendants Young, Wasson, and Royer were personally involved in the alleged constitutional deprivation.

### C. Availability of Relief under the FTCA

Finally, the United States seeks dismissal of Mr. Sebolt's FTCA claim. Under the FTCA, a plaintiff may bring suit against the United States for injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). State tort law of the state where the tort occurred applies when determining "whether the duty was breached and whether the breach was the proximate cause of the plaintiff's injuries." *Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008); *see also* 28 U.S.C. § 1346(b). Because Mr. Sebolt challenges the conditions of his confinement at USP Terre Haute, Indiana law applies to this case.

The FTCA only allows a plaintiff to hold the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The United States argues that Mr. Sebolt's FTCA claim must be dismissed because he "has not identified any Indiana state law that would create liability for a private person under circumstances like those alleged in his Amended Complaint as required to sustain an FTCA claim on that ground." Dkt. 34 at 14.

Because the basis for liability under the FTCA is negligence, the applicable Indiana state tort claim is negligence. Under Indiana law, Mr. Sebolt must allege (1) that the United States owed a duty to him; (2) that the United States breached that duty; and (3) that the breach proximately caused his injuries. *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016). Construing Mr. Sebolt's pro se complaint liberally, *see Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015), he has done so.

8

The Federal Bureau of Prisons owed a duty of care to Mr. Sebolt during his incarceration at USP Terre Haute. 18 U.S.C. § 4042(a)(2) ("The Bureau of Prisons . . . shall provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons . . . convicted of offenses against the United States . . . ."); *see also Gottlieb v. United States*, 624 F. Supp. 2d 1011, 1025 (S.D. Ind. 2008) ("Indiana law recognizes that a custodian has a legal duty to exercise reasonable care to preserve the life, health, and safety of a person in custody."); *Sauders v. Co. of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998) ("It is well settled that a custodian under some circumstances has a legal duty to take steps to protect persons in custody from harm.").

Mr. Sebolt has alleged enough facts for the Court to draw the inference that prison officials breached their duty of care and the breach caused him physical injury. The defendants failed to provide Mr. Sebolt a mattress for over two months, and he suffered from various aches and pains as a result. *Cf. Smith v. United States*, 678 F. App'x 403, 406 (7th Cir. 2017) (where federal investigatory analyst for the ATF sued her employer for removing and then restoring a hard drive, district court correctly dismissed plaintiff's FTCA suit where her negligence claim was deficient because she "did not allege in her complaint that she suffered any injury resulting from the replacement of the hard drive").

The United States relies on *Pappas v. United States*, 617 F. App'x 879, 882 (10th Cir. 2015), an unpublished Tenth Circuit case involving similar allegations about prison employees withholding a mattress while the plaintiff was in segregation for a month. The court found that dismissal of his complaint was proper because "Pappas did not demonstrate that conduct by a private person akin to that alleged in his complaint would constitute a violation of the duty of care under Oklahoma law." *Id.* That decision, which is not binding on the Court, seems inconsistent with the Seventh Circuit's application of the liberal pleading standard created by Federal Rule of

Civil Procedure 8(a). *See, e.g.*, *Auto Driveway Franchise Sys. v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019) ("A complaint need only provide notice of a plausible claim; there is no rule requiring parties to plead legal theories or elements of a case. . . . Any failure to include the specifics Corbett identifies does not offend the requirements of Federal Rule of Civil Procedure 8(a)(2)."). Because Mr. Sebolt alleges facts that would support each element of an Indiana negligence claim, dismissal at this stage would be improper.

Drawing all permissible inferences in Mr. Sebolt's favor, he has alleged sufficient facts to allege a negligence claim under Indiana law. The United States' motion to dismiss his FTCA claim is **denied**.

## V. Conclusion

For the foregoing reasons, the defendants' motion to dismiss for failure to state a claim, dkt. [33], is **granted** with respect to Mr. Sebolt's *Bivens* claim and **denied** with respect to his FTCA claim. The **clerk is directed** to terminate Officer Tyndall, Officer Monett, Lt. Young, Counselor Wasson, and Unit Manager Royer as defendants in this action.

The United States has **through November 8, 2021,** to answer Mr. Sebolt's amended complaint.

**SO ORDERED.**

Date: 10/25/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

PHILIP M. SEBOLT
14682-424
TUCSON - USP
TUCSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 24550
TUCSON, AZ 85734

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov